UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| CITY OF CHELSEA; CITY OF LAWRENCE | ) ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) | Civil Action No. 17-10214-GAO |
| DONALD J. TRUMP, President of the United States of America; JOHN F. KELLEY, Secretary of the United States Department of Homeland Security; JEFFERSON B. SESSIONS, III, Attorney General of the United States; DOES 1-100, | ) ) ) ) ) ) ) | |
| Defendants. | ) ) | |

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS**

## TABLE OF CONTENTS

INTRODUCTION ................................................................................................................. 1

LEGAL OVERVIEW .......................................................................................................... 3

    I.    The Executive Enjoys Broad Discretion in Enforcement of Immigration Law .................. 3

    II.   Executive Order 13,768 ..................................................................................................... 5

PROCEDURAL BACKGROUND ...................................................................................... 7

LEGAL STANDARD .......................................................................................................... 8

ARGUMENT ....................................................................................................................... 9

    I.    The Court Lacks Jurisdiction to Consider the Cities' Claims ............................................ 9

      A.   The Cities' Claims Are Not Ripe for Judicial Review ................................................... 10

        1.    The Cities' Claims Are Not Fit for Judicial Review Because Those Claims are Based on Contingent Future Events. ........................................................................................... 11

        2.    The Cities Fail to Establish Sufficient Harm from Delay of Judicial Review. .......... 13

      B.   The Cities Lack Standing Because They Have Failed to Demonstrate They Have Suffered Concrete and Immediate Injury In Fact. ................................................................. 14

    II.   The Cities Fail to State a Claim that Section 1373 Violates the Tenth Amendment. ........ 16

    IV.   The Cities Fail to State a Claim Under the Fifth Amendment Vagueness Doctrine ...... 17

    V.   The Cities Fail to State a Claim for Declaratory Relief Regarding Their Compliance with Section 1373. ...................................................................................................................... 19

    VI.   Injunctive or Declaratory Relief Against the President is Inappropriate. ...................... 20

CONCLUSION .................................................................................................................... 20

## TABLE OF AUTHORITIES

<u>**Cases**</u>

*Abbott Labs. v. Gardner*,
   387 U.S. 136 (1967) ...................................................................................................... passim

*Alexander v. Sandoval*,
   532 U.S. 275 (2001) ............................................................................................................. 19

*Arizona Dream Act Coal. v. Brewer*,
   ___ F.3d ___, No. 15-15307, 2017 WL 461503 (9th Cir. Feb. 2, 2017) .................................. 3

*Arizona v. United States*,
   567 U.S. 387, 132 S. Ct. 2492 (2012) ................................................................................... 3

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009) .............................................................................................................. 9

*Berner v. Delahanty*,
   129 F.3d 20 (1st Cir. 1997) ................................................................................................... 9

*Bigelow v. Virginia*,
   421 U.S. 809 (1975) ............................................................................................................ 15

*Boston Teachers Union, Local 66, AFT, AFL-CIO v. Edgar*,
   787 F.2d 12 (1st Cir. 1986) ................................................................................................. 20

*Buck v. Am. Airlines, Inc.*,
   476 F.3d 29 (1st Cir. 2007) ................................................................................................. 20

*City of Fall River v. FERC*,
   507 F.3d 1 (1st Cir. 2007) ..................................................................................................... 9

*City of N.Y. v. United States*,
   179 F.3d 29 (2d Cir. 1999) .................................................................................................. 17

*Doe v. Bush*,
   323 F.3d 133 (1st Cir. 2003) ............................................................................................... 10

*Eagle-Picher Indus., Inc. v. EPA*,
   759 F.2d 905 (D.C. Cir. 1985) ............................................................................................ 13

*Ernst & Young v. Depositors Economic Protection Corp.*,
    45 F.3d 530 (1st Cir. 1995) ............................................................... 11

*Foley v. Wells Fargo Bank, N.A.*,
    772 F.3d 63 (1st Cir. 2014) ................................................................. 9

*Golden v. Zwickler*,
    394 U.S. 103 (1969) ........................................................................... 19

*Hightower v. City of Boston*,
    693 F.3d 61 (1st Cir. 2012) ............................................................... 17

*Humanitarian Law Project v. Dep't of the Treasury*,
    578 F.3d 1133 (9th Cir. 2009) ........................................................... 18

*Lujan v. Defenders of Wildlife*,
    504 U.S. 555 (1992) ...................................................................... 8, 16

*Mass. Ass'n of Afro–American Police, Inc. v. Boston Police Dep't*,
    973 F.2d 18 (1st Cir. 1992) ........................................................ 11, 12

*Mississippi v. Johnson*,
    71 U.S. 475 (1866) ............................................................................ 20

*Nat'l Park Hosp. Ass'n v. Dep't of Interior*,
    538 U.S. 803 (2003) .......................................................................... 12

*Newdow v. Bush*,
    391 F. Supp. 2d 95 (D.D.C. 2005) .................................................... 20

*Renne v. Geary*,
    501 U.S. 312 (1991) ............................................................................ 8

*Reno v. Catholic Soc. Servs., Inc.*,
    509 U.S. 43 (1993) ............................................................................ 10

*Rhode Island Ass'n of Realtors, Inc. v. Whitehouse*,
    199 F.3d 26 (1st Cir. 1999) ............................................................... 14

*Roman Catholic Bishop of Springfield v. City of Springfield*,
    724 F.3d 78 (1st Cir. 2013) ........................................................ 11, 13

*Sampson v. Murray*,
    415 U.S. 61 (1974) ............................................................................ 14

*Skilling v. United States*,
    561 U.S. 358 (2010) ........................................................................................ 3, 18

*Steel Co. v. Citizens for a Better Env't*,
    523 U.S. 83 (1998) .......................................................................................... 8, 14

*Swan v. Clinton*,
    100 F.3d 973 (D.C. Cir. 1996) ............................................................................ 20

*Texas Indus. v. Radcliff Materials, Inc.*,
    451 U.S. 630 (1981) ............................................................................................ 19

*Texas v. United States*,
    523 U.S. 296 (1998) ........................................................................................ 9, 10

*Toilet Goods Ass'n, Inc. v. Gardner*,
    387 U.S. 158 (1967) ............................................................................................ 13

*United States ex rel. Ondis v. City of Woonsocket*,
    587 F.3d 49 (1st Cir. 2009) .................................................................................. 8

*United States v. Barnes*,
    890 F.2d 545 (1st Cir. 1989) .............................................................................. 18

*United States v. Mazurie*,
    419 U.S. 544 (1975) .................................................................................... 3, 18, 19

*United States v. Salerno*,
    481 U.S. 739 (1987) .................................................................................... 2, 16, 17

*Warth v. Seldin*,
    422 U.S. 490 (1975) ............................................................................................ 10

*Wash. State Grange v. Wash. State Republican Party*,
    552 U.S. 442 (2008) ...................................................................................... 16, 17

*Welch v. United States*,
    136 S. Ct. 1257 (2016) ....................................................................................... 18

*Whitmore v. Arkansas*,
    495 U.S. 149 (1990) .............................................................................. 2, 9, 14, 15

**Statutes**

8 U.S.C. §§ 1101 *et seq.*...................................................................................... 3

8 U.S.C. § 1373...................................................................................... passim

8 U.S.C. § 1357...................................................................................... 4

28 U.S.C. § 1331...................................................................................... 19

28 U.S.C. § 1346...................................................................................... 19

28 U.S.C. § 2201...................................................................................... 20

28 U.S.C. § 2202...................................................................................... 20

U.S. Const. art. II § 3 ...................................................................................... 3

U.S. Const. art. III § 2 ...................................................................................... 8

**Other Authorities**

Exec. Order No. 13,768,
    82 Fed. Reg. 8799 (Jan. 30, 2017) ................................................................ passim

Exec. Order No. 13,726,
    81 Fed. Reg. 23,559 (2016)................................................................ 4

Exec. Order No. 13,608,
    77 Fed. Reg. 26,409 (2012)................................................................ 4

ICE Declined Detainer Outcome Report FAQs,
    *available at* https://www.ice.gov/declined-detainer-outcome-report.................................. 6, 12

Ltr. from Samuel R. Ramer, Acting Ass't Att'y Gen., Office of Legis. Affairs to
    Sens. Elizabeth Warren and Edward J. Markey (Mar. 7, 2017)................................ 1

Mem. from John Kelly, Sec'y of Homeland Sec., to Kevin McAleenan, Acting
    Comm'r, U.S. Customs and Border Protection, et al., *Enforcement of the
    Immigration Laws to Serve the National Interest* (Feb. 20, 2017)............................ 4

Mem. from Michael E. Horowitz, Inspector Gen., to Karol V. Mason, Assistant Att'y
    Gen., Office of Justice Programs, *Department of Justice Referral of Allegations of
    Potential Violations of 8 U.S.C. § 1373 by Grant Recipients* (May 31, 2016),
    *available at* https://oig.justice.gov/reports/2016/1607.pdf ........................................ 5

Pub. L. No. 104-208, 110 Stat. 3009 (1996)................................................................... 5

## INTRODUCTION

On January 25, 2017, the President signed Executive Order 13,768 for the declared purpose of "direct[ing] executive departments and agencies . . . to employ all lawful means to enforce the immigration laws of the United States."  *See* Exec. Order No. 13,768, § 1, 82 Fed. Reg. 8,799 (Jan. 30, 2017).  Section 9 of the Order, which is the subject of this litigation, establishes a policy of ensuring that state and local jurisdictions comply with 8 U.S.C. § 1373. *Id.* § 9, 82 Fed. Reg. at 8,801.  Section 1373 provides, *inter alia*, that no government entity or official may prohibit or restrict the sending or receiving of information regarding the citizenship or immigration status of any individual to federal immigration authorities.  8 U.S.C. § 1373.

The Order is a presidential directive, directed to the Attorney General, the Secretary of Homeland Security (the "Secretary"), and other federal officials.  It does not purport to alter the existing requirements of Section 1373 (or any other federal law), impose new burdens on state or local jurisdictions, or expand the legal authority of the Secretary or the Attorney General. Rather, it simply announces the policy of the Executive Branch and directs the Secretary and Attorney General, in their discretion and consistent with their existing legal authority, to ensure that jurisdictions that willfully refuse to comply with Section 1373 not be eligible to receive federal grants, except as deemed necessary for law enforcement purposes.  *Id.*  Section 9 of the Executive Order is not self-executing, and the Secretary and Attorney General have not yet taken the several steps necessary to execute the directives contained in that section.[1]

Defendants have taken no action against the Cities of Chelsea and Lawrence, Massachusetts (the "Cities") under Section 1373 or under Section 9 of the Executive Order. Nevertheless, the Cities filed the instant lawsuit seeking declaratory and injunctive relief to prevent defendants from taking hypothetical future actions pursuant to those authorities.  The

---

[1] In this regard, the Department of Justice sent a letter to members of Congress, on March 7, 2017, stating that the Department was "in the process of identifying, in its discretion, what actions, if any, can lawfully be taken in order to encourage state and local jurisdictions to comply with federal law."  *See* Ltr. from Samuel R. Ramer, Acting Ass't Att'y Gen., Office of Legis. Affairs to Sens. Elizabeth Warren and Edward J. Markey (Mar. 7, 2017) (Attachment 1 hereto).

Cities' lawsuit is premature.  The Cities concede that they have not been the subject of *any* adverse action, and they fail to allege that such action has even been threatened.  Indeed, the Secretary has not designated (or even indicated an intent to designate) the Cities as "sanctuary jurisdictions" in accordance with the process contemplated in Section 9, and the Cities affirmatively state that they comply with the requirements of Section 1373.

The Cities cannot show any injury due to the mere existence of Section 1373 or the Executive Order, much less establish the "concrete," "palpable" injury needed to meet the constitutional requirement of standing.  *Whitmore v. Arkansas*, 495 U.S. 149, 155 (1990). Moreover, because the Executive Order has not been "formalized and its effects felt in a concrete way," the Cities' pre-enforcement challenge to the Order should be rejected under the ripeness doctrine.  *See Abbott Labs. v. Gardner*, 387 U.S. 136, 148-49 (1967) *abrogated on other grounds*, *Califano v. Sanders*, 430 U.S. 99, 97 (1977).  The Cities' Complaint is based on speculation concerning the Order's scope, assumptions about the manner in which the Secretary and Attorney General might interpret and implement the Order's provisions, and conjecture concerning the possibility that the Cities might one day be designated as "sanctuary jurisdictions" pursuant to the Order and might lose certain, unidentified federal grants as a result. Such speculative assertions fall short of demonstrating concrete injury, and the Supreme Court has made clear that the ripeness doctrine exists to prevent courts from issuing decisions based on hypothetical circumstances like those alleged in the Complaint.

Additionally, the Cities have failed to state claims upon which relief can be granted for general declaratory relief or under the Tenth Amendment and Fifth Amendment to the Constitution.  The Cities' request for a declaration regarding their compliance with Section 1373 fails because the Cities identify no cause of action authorizing such relief, and because the relief they seek would require the Court to render an advisory opinion, which is forbidden under Article III.  Their facial Tenth Amendment challenge to Section 1373 fails because the Complaint fails to establish that "no set of circumstances exists under which [Section 1373] would be valid."  *United States v. Salerno*, 481 U.S. 739, 745 (1987).  Similarly, their Fifth

Amendment pre-enforcement challenge under the vagueness doctrine fails because such challenges are precluded in matters in which First Amendment freedoms are not at stake, *see United States v. Mazurie*, 419 U.S. 544, 550 (1975), or where the challenged provision is amenable to a limiting construction.  *See Skilling v. United States*, 561 U.S. 358, 405 (2010).

The Executive Order does not alter or expand the existing law that governs when the Federal Government may revoke a federal grant where the grantee violates legal requirements. Instead, the President – pursuant to his express constitutional authority to ensure that federal agencies "take Care that the Laws be faithfully executed," U.S. Const. art. II, § 3 – has directed agency heads to utilize their existing legal authorities "to the extent consistent with law," *see* Exec. Order No. 13,768, § 9, in connection with local violations of Section 1373.  In other words, the Executive Order does nothing more than direct enforcement of preexisting duties under federal law.  The Cities' conjecture to the contrary does not satisfy their burden of establishing the justiciability or viability of their claims; accordingly, the Court should dismiss the Complaint pursuant to Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure.

## LEGAL OVERVIEW

I.      **The Executive Enjoys Broad Discretion in Enforcement of Immigration Law.**

"The Government of the United States has broad, undoubted power over the subject of immigration and the status of aliens."  *Arizona v. United States*, 567 U.S. 387, 132 S. Ct. 2492, 2497 (2012).  Through the Immigration and Nationality Act ("INA"), 8 U.S.C. §§ 1101 *et seq*., Congress granted the Executive Branch significant authority to control the entry, movement, and other conduct of foreign nationals in the United States.  Under the INA, the Department of Homeland Security ("DHS"), the Department of Justice, and other agencies of the Executive Branch administer and enforce the immigration laws.  Likewise, the INA permits the Executive Branch to exercise considerable executive discretion to direct enforcement pursuant to federal policy objectives.  *See Arizona Dream Act Coal. v. Brewer*, ___ F.3d ___, No. 15-15307, 2017 WL 461503, at *9-10 (9th Cir. Feb. 2, 2017) ("By necessity, the federal statutory and regulatory

scheme, as well as federal case law, vest the Executive with very broad discretion to determine enforcement priorities."). Several Presidents have exercised this discretion by Executive Order, and they have done so in differing ways, reflecting their individual judgments as to how best to take care that the laws of the United States be faithfully executed. *See*, *e.g.*, Exec. Order No. 13,726, 81 Fed. Reg. 23,559 (2016) ("Suspending Entry Into the United States of Persons Contributing to the Situation in Libya"); Exec. Order No. 13,608, 77 Fed. Reg. 26,409 (2012) ("Suspending Entry Into the United States of Foreign Sanctions Evaders With Respect to Iran and Syria"). The Secretary has also consistently exercised similar executive discretion in the enforcement of federal immigration law. *See*, *e.g.*, Mem. from John Kelly, Sec'y of Homeland Sec., to Kevin McAleenan, Acting Comm'r, U.S. Customs and Border Protection, et al., *Enforcement of the Immigration Laws to Serve the National Interest* (Feb. 20, 2017).[2]

The INA contains a number of provisions regarding the involvement of state and local authorities in the enforcement of immigration law. For example, Section 287(g) of the INA authorizes the Secretary to enter into written agreements with a state or local government under which officers of such government may "perform a function of an immigration officer in relation to the investigation, apprehension, or detention of aliens in the United States." 8 U.S.C. § 1357(g)(1). Likewise, the INA provides for cooperation with DHS in the "identification, apprehension, detention, or removal of aliens not lawfully present in the United States[,]" even without a formal cooperation agreement. *Id.* § 1357(g)(10)(B). Another provision, 8 U.S.C. § 1373, ensures the sharing of information between federal and state actors:

> Notwithstanding any other provision of Federal, State, or local law, a Federal, State, or local government entity or official may not prohibit, or in any way restrict, any government entity or official from sending to, or receiving from, [federal immigration authorities] information regarding the citizenship or immigration status, lawful or unlawful, of any individual.

---

[2]  The memorandum is available at https://www.dhs.gov/ sites/ default/ files/ publications/ 17_0220_S1_Enforcement-of-the-Immigration-Laws-to-Serve-the-National-Interest.pdf.

*Id.* § 1373(a); *see* Pub. L. No. 104-208, Div. C, Title VI, § 642, 110 Stat. 3009, 3009-707 (1996). Section 1373 also proscribes prohibiting or restricting any government entity from "maintaining" information regarding the immigration status of any individual.  8 U.S.C. § 1373(b).

Well before the issuance of Executive Order 13,768, the compliance of state and local governments with Section 1373 has been of interest to federal agencies because such governments are recipients of federal grants.  For example, the Inspector General of the Department of Justice issued a memorandum on May 31, 2016, as plaintiffs note (Compl. ¶¶ 71-74), describing a concern that several state and local governments receiving federal grants were not complying with 8 U.S.C. § 1373.  *See* Mem. from Michael E. Horowitz, Inspector Gen., to Karol V. Mason, Assistant Att'y Gen., Office of Justice Programs, *Department of Justice Referral of Allegations of Potential Violations of 8 U.S.C. § 1373 by Grant Recipients* (May 31, 2016), *available at* https://oig.justice.gov/reports/2016/1607.pdf.  Although the Inspector General observed that some applications of certain local ordinances might be inconsistent with Section 1373, *id*. at 4-8, the report nevertheless noted that "no one at DHS . . . has made a formal legal determination whether certain state and local laws or policies violate Section 1373, and we are unaware of any Department of Justice decision in that regard."  *Id*. at 8 n.12.

## II.   <u>Executive Order 13,768</u>

The President signed Executive Order 13,768, *Enhancing Public Safety in the Interior of the United States*, on January 25, 2017.  82 Fed. Reg. 8,799 (Jan. 30, 2017).  The Order seeks to "[e]nsure the faithful execution of the immigration laws," including the INA.  *See id*. § 2(a), 82 Fed. Reg. at 8,799.  It sets forth several policies and priorities regarding enforcement of federal immigration law within the United States, and it instructs certain federal officials to use "all lawful means" to enforce those laws.  *See id*. §§ 1, 4, 82 Fed. Reg. at 8,799-800.

As permitted by the INA, Executive Order 13,768 establishes priorities regarding aliens who are subject to removal from the United States under the immigration laws.  *Id*. § 5, 82 Fed. Reg. at 8,800.  Several provisions of the Order instruct officials to take actions directing future conduct, including instructions to promulgate certain regulations within one year, to take "all

5

appropriate action" to hire additional immigration officers, to seek agreements with state and local officials under Section 287(g) of the INA (referred to above), to develop a program to ensure adequate prosecution of criminal immigration offenses, and to establish an office to provide certain services to victims of crimes committed by removable aliens. *Id.* §§ 6, 7, 8, 11, 13, 82 Fed. Reg. at 8,799-802.  Throughout, the Order specifies that federal officials are to take these actions as "permitted by law" or as "consistent with law." *Id.* §§ 7, 8, 9(a), 10(b), 12, 14, 17, 18(b), 82 Fed. Reg. at 8,799-802.

Section 9 of the Executive Order provides that "[i]t is the policy of the executive branch to ensure, to the fullest extent of the law, that a State, or a political subdivision of a State, shall comply with 8 U.S.C. 1373."  Section 9(a) directs federal agencies to achieve that policy:

> In furtherance of this policy, the Attorney General and the Secretary [of Homeland Security], in their discretion and to the extent consistent with law, shall ensure that jurisdictions that willfully refuse to comply with 8 U.S.C. 1373 (sanctuary jurisdictions) are not eligible to receive Federal grants, except as deemed necessary for law enforcement purposes by the Attorney General or the Secretary.  The Secretary has the authority to designate, in his discretion and to the extent consistent with law, a jurisdiction as a sanctuary jurisdiction.  The Attorney General shall take appropriate enforcement action against any entity that violates 8 U.S.C. 1373, or which has in effect a statute, policy, or practice that prevents or hinders the enforcement of Federal law.

*Id.* § 9(a), 82 Fed. Reg. at 8,801.  Section 9 further directs the Secretary to publicize, each week, "a comprehensive list of criminal actions committed by aliens and any jurisdiction that ignored or otherwise failed to honor any detainers with respect to such aliens." *Id.* § 9(b), 82 Fed. Reg. at 8,801.[3]  It also instructs the Director of OMB to "obtain and provide relevant and responsive

---

[3] U.S. Immigration and Customs Enforcement ("ICE") published the first weekly report pursuant to this directive on March 20, 2017, and made clear that publication of that report did not constitute a designation of "sanctuary jurisdictions" under Section 9. *See, e.g.*, ICE Declined Detainer Outcome Report FAQs, *available at* https://www.ice.gov/declined-detainer-outcome-report ("Are the jurisdictions or agencies on this list considered sanctuary locations? . . . As set forth in Executive Order 13768, . . . the Secretary has authority to designate, in his discretion and to the extent consistent with law, a jurisdiction as a sanctuary jurisdiction.  [DHS] continues to

information on all Federal grant money that currently is received by any sanctuary jurisdiction."
*Id*. § 9(c), 82 Fed. Reg. at 8,801.

Finally, the Executive Order directs the Secretary and the Attorney General to report on
their progress in implementing the Order, first "within 90 days of the date of [the] order and
again within 180 days of the date of [the] order."  *Id*. § 15, 82 Fed. Reg. at 8,802.

## PROCEDURAL BACKGROUND

The Cities filed the Complaint in this matter on February 8, 2017, seeking declaratory
and injunctive relief to prohibit the enforcement of Section 1373 and the implementation of the
Order.  *See generally* Compl., Prayer for Relief ¶¶ A–O (ECF No. 1).  The Cities do not allege
that the Secretary has designated them as "sanctuary jurisdictions" in accordance with the
process contemplated in Section 9.  *See, e.g.*, *id.* ¶¶ 69, 110.  They also do not allege that any
federal funding has been withheld or revoked pursuant to the Order, or that any federal agency
has threatened them with any adverse action.  Rather, they allege only that there are "reasons to
believe" that, at some point in the future, defendants "will interpret the ordinances, policies, and
practices" of the Cities in a certain manner, and, as a result, the defendants might designate the
Cities as sanctuary jurisdictions.  *Id.* ¶ 69.  The Cities further allege that, following this
hypothetical future designation, defendants might decide to withhold an indeterminate amount of
federal funding from the Cities, or take other, unspecified action against them.  *Id.*

The Cities also contend that they "comply with the requirements of 8 U.S.C. § 1373," *id.*
¶ 80, and they seek a declaration from this Court confirming their compliance with that

_____

evaluate the appropriate criteria for such designation."); *id.* ("My jurisdiction is on the Declined
Detainer Outcome Report.  Will we lose our federal funding? . . .  ICE does not administer
grants, and inclusion on the DDOR will not automatically result in ineligibility for grants. . . .
DHS is currently working to develop a process, in coordination with the Department of Justice
and other interagency partners, to address" the grant eligibility provisions of E.O. 13,768.).

provision, *id.,* Prayer for Relief ¶ B.  They nevertheless contend that the defendants might one

day construe the requirements of Section 1373 in a manner that would render that provision

unconstitutional, and that defendants might rely on that unconstitutional interpretation to take

adverse action against them.  *See, e.g., id.* ¶ 139 (alleging that *if* the defendants were to apply or

interpret Section 1373 in certain ways, those interpretations or applications "would be"

unconstitutional).  Importantly, the Cities do not allege that any adverse action has been taken

against them pursuant to Section 1373.

## <u>LEGAL STANDARD</u>

Defendants seek dismissal of the Complaint pursuant to Rule 12(b)(1) the Federal Rules

of Civil Procedure on the grounds that the Court lacks subject-matter jurisdiction to entertain the

complaint.  The jurisdiction of a federal court is limited to "cases" and "controversies."  U.S.

Const., Art. III, § 2.  "Jurisdiction is power to declare the law, and when it ceases to exist, the

only function remaining to the court is that of announcing the fact and dismissing the cause."

*Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 94 (1998).  The party asserting federal court

jurisdiction has the burden of demonstrating its existence.  *See Lujan v. Defenders of Wildlife*,

504 U.S. 555, 561 (1992); *United States ex rel. Ondis v. City of Woonsocket*, 587 F.3d 49, 54 (1st

Cir. 2009).  Courts should "presume that [they] lack jurisdiction unless the contrary appears

affirmatively from the record."  *Renne v. Geary*, 501 U.S. 312, 316 (1991).

Defendants also seek dismissal of several of the claims alleged in the Complaint pursuant

to Rule 12(b)(6) for failure to state a claim upon which relief can be granted.  In evaluating a

Rule 12(b)(6) argument, the Court accepts the factual allegations in the complaint as true,

construes reasonable inferences in the complainant's favor, and "determine[s] whether the

factual allegations in the plaintiff's complaint set forth a plausible claim upon which relief may

be granted." *Foley v. Wells Fargo Bank, N.A.*, 772 F.3d 63, 71 (1st Cir. 2014).  To survive a

Rule 12(b)(6) motion, the factual allegations in a complaint must "state a claim to relief that is

plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  "A claim has facial

plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable

inference that the defendant is liable for the misconduct alleged." *Id.* at 678.  Dismissal for

failure to state a claim is appropriate when the complaint fails to set forth "factual allegations,

either direct or inferential, respecting each material element necessary to sustain recovery under

some actionable legal theory." *Berner v. Delahanty*, 129 F.3d 20, 25 (1st Cir. 1997).

## ARGUMENT

### I.      The Court Lacks Jurisdiction to Consider the Cities' Claims.

Executive Order 13,768 is not self-executing and no adverse action has been taken

against the Cities under the Order.  Nor has the government interpreted or implemented Section

1373 in the manner that the Cities fear, or taken any action whatsoever against the Cities

pursuant to that provision of law.  Accordingly, because the Cities' claims "rest[] upon

contingent future events that may not occur as anticipated, or indeed may not occur at all," those

claims are not ripe for adjudication.  *Texas v. United States*, 523 U.S. 296, 300 (1998); *City of

Fall River v. FERC*, 507 F.3d 1, 7 (1st Cir. 2007).  Similarly, because defendants have not taken

or threatened to take any adverse action against the Cities under the challenged authorities, the

Cities cannot meet their burden of establishing a "concrete," "objective," and "palpable," injury

necessary to satisfy the constitutional requirement of standing.  *Whitmore*, 495 U.S. at 155.

Thus, the Cities' claims are non-justiciable under both the ripeness doctrine and the standing

doctrine, and the Court lacks jurisdiction to entertain those claims.

A.     The Cities' Claims Are Not Ripe for Judicial Review.

Article III of the United States Constitution requires that a dispute must be ripe for judicial consideration—that is, a controversy must have "matured sufficiently to warrant judicial intervention." *Warth v. Seldin*, 422 U.S. 490, 499 n.10 (1975).  "A claim is not ripe for adjudication [under the Constitution] if it rests upon contingent future events that may not occur as anticipated, or indeed may not occur at all." *Texas*, 523 U.S. at 300; *see also Abbott Labs.*, 387 U.S. at 148 ("[I]njunctive and declaratory judgment remedies are discretionary, and courts traditionally have been reluctant to apply them to administrative determinations unless these arise in the context of a controversy 'ripe' for judicial resolution.").  The ripeness doctrine, like other justiciability doctrines, "is drawn both from Article III limitations on judicial power and from prudential reasons for refusing to exercise jurisdiction." *Reno v. Catholic Soc. Servs., Inc.*, 509 U.S. 43, 58 n.18 (1993).  The doctrine "prevent[s] the courts, through avoidance of premature adjudication, from entangling themselves in abstract disagreements over administrative policies, and . . . protect[s] the agencies from judicial interference until an administrative decision has been formalized and its effects felt in a concrete way by the challenging parties." *Abbott Labs.*, 387 U.S. at 148-49.  The doctrine also allows courts to "avoid unnecessary constitutional decisions," and it is animated by "the recognition that, by waiting until a case is fully developed . . . courts benefit from a focus sharpened by particular facts." *Doe v. Bush*, 323 F.3d 133, 138 (1st Cir. 2003).

In assessing constitutional ripeness in the context of a pre-enforcement challenge to a statutory or administrative enactment, courts consider "both the fitness of the issues for judicial decision and the hardship to the parties of withholding court consideration." *Abbott Labs.* at 149; *Roman Catholic Bishop of Springfield v. City of Springfield*, 724 F.3d 78, 89–90 (1st Cir.

2013) ("We generally require both prongs to be satisfied in order for a claim to be considered ripe.").  "The fitness prong of the ripeness test has both jurisdictional and prudential components."  *Roman Catholic Bishop of Springfield*, 724 F.3d at 89–90.  The jurisdictional component "is one of timing[;]" it "concerns whether there is a sufficiently live case or controversy, at the time of the proceedings, to create jurisdiction in the federal courts."  *Id.*  "The prudential component asks whether resolution of the dispute should be postponed in the name of judicial restraint from unnecessary decision of constitutional issues; if elements of the case are uncertain, delay may see the dissipation of the legal dispute without need for decision."  *Id.*; *see also Ernst & Young v. Depositors Economic Protection Corp.*, 45 F.3d 530, 535 (1st Cir. 1995) ("This [fitness] branch of the test typically involves subsidiary queries concerning finality, definiteness, and the extent to which resolution of the challenge depends upon facts that may not yet be sufficiently developed.").

The hardship prong of the ripeness test "looks at whether the challenged action creates a direct and immediate dilemma for the parties."  *Roman Catholic Bishop of Springfield*, 724 F.3d at 89–90.  The "mere possibility of future injury, unless it is the cause of some present detriment, does not constitute hardship."  *Id.*

### 1.   The Cities' Claims Are Not Fit for Judicial Review Because Those Claims are Based on Contingent Future Events.

"[T]he critical question concerning fitness for review is whether the claim involves uncertain and contingent events that may not occur as anticipated or may not occur at all."  *Mass. Ass'n of Afro–American Police, Inc. v. Boston Police Dep't*, 973 F.2d 18, 20 (1st Cir. 1992) (per curiam).  Here, the Cities do not allege to have been penalized in any manner pursuant to Section 1373 or Section 9 of the Executive Order, and the administration has not yet implemented the enforcement provisions of Section 9.  Implementation of those provisions rests upon several

"contingent events that may not occur as anticipated." *Id.* For example, the administration may clarify some of the terms used in that Section and must take steps to designate jurisdictions as "sanctuary jurisdictions." The administration has stated that these predicate steps are yet to occur. *See, e.g.*, ICE Declined Detainer Outcome Report FAQs, *available at* https://www.ice.gov/declined-detainer-outcome-report (acknowledging that the Secretary is "evaluat[ing] the appropriate criteria for [sanctuary jurisdiction] designation" and that "DHS is currently working to develop a process, in coordination with the Department of Justice and other interagency partners, to address" the grant eligibility provisions of E.O. 13,768.).

The string of hypothetical events upon which the allegations in the Complaint rest provides evidence that the Cities' claims are not fit for review. The speculation in which the Court would be required to engage in entertaining those claims would include having to assume that the administration will interpret the requirements of Section 1373 in an unconstitutional manner, that the administration will make a factual determination that the Cities are subject to designation as sanctuary jurisdictions, and that the Secretary or the Attorney General or both will rely on those findings to take some form of adverse action against the Cities. Those events may not transpire as the Cities anticipate, or may not transpire at all. For example, the administration may ultimately define certain terms in a manner that excludes the Cities or the grants they receive or otherwise diminishes the Order's anticipated impact.

Delaying judicial review until there has been some concrete application of the Executive Order or some specific enforcement of Section 1373 would allow an opportunity for factual development of the Cities' claims and would avoid judicial speculation. *See Nat'l Park Hosp. Ass'n v. Dep't of Interior*, 538 U.S. 803, 812 (2003) (finding that, even where "the question presented . . . is a purely legal one[,]" the issue may not be fit for review if the court "believe[s]

that further factual development would significantly advance [its] ability to deal with the legal issues presented"). Thus, because the challenged provisions of Section 9 have not yet been implemented, and the administration must take several actions before that can occur, this Court would greatly benefit from deferring review until the parameters of the Order's implementation "have crystallized and the question arises in some more concrete and final form" that is "fit" for judicial decision. *Eagle-Picher Indus., Inc. v. EPA*, 759 F.2d 905, 915 (D.C. Cir. 1985).

        2.  <u>The Cities Fail to Establish Sufficient Harm from Delay of Judicial Review</u>.

The Cities also fail to allege harm sufficient to justify pre-enforcement review. To satisfy the hardship prong of the ripeness inquiry in the pre-enforcement review context, a plaintiff must demonstrate that "irremediable adverse consequences" will result from postponing review. *Toilet Goods Ass'n, Inc. v. Gardner*, 387 U.S. 158, 164 (1967). Generally, the alleged harm must be "direct and immediate[;] . . . a mere possibility of future injury, unless it is the cause of some present detriment, does not constitute hardship." *Roman Catholic Bishop of Springfield*, 724 F.3d at 90. Moreover, "mere financial expense . . . is not a justification for pre-enforcement judicial review." *Abbott Labs.*, 387 U.S. at 153.

The Cities cannot satisfy the immediacy requirement of the hardship inquiry because, as mentioned already, several steps must be taken before Section 9 can be implemented, including a determination as to what constitutes a "sanctuary jurisdiction," what federal grants are subject to the enforcement provisions of the Order, and what actions the administration might take in limiting those grants in a manner that is "consistent with law." Those determinations will have a bearing on the particular federal grants to which Section 9 might apply, and whether that Section is applied to the Cities at all. Thus, any "hardship" the Cities face is far from "immediate."

Moreover, the primary harm the Cities allege—the potential loss of federal grant funding—is monetary in nature. The Supreme Court has held that the potential of monetary loss typically is not "a sufficient interest to sustain a judicial challenge" to agency action. *Abbott Labs.*, 387 U.S. at 153; *Sampson v. Murray*, 415 U.S. 61, 90 (1974) (finding that "[m]ere injuries, however substantial, in terms of money, time and energy necessarily expended . . . are not enough" to justify injunctive relief). At this point, the Cities have suffered no harm— monetary or otherwise—because the administration has taken no enforcement action against them under the Executive Order or Section 1373. Accordingly, because the Cities cannot show that they face immediate and irremediable adverse consequences from delaying review until the Order has been applied, the Court should dismiss their claims under the ripeness doctrine.

**B.      The Cities Lack Standing Because They Have Failed to Demonstrate They Have Suffered Concrete and Immediate Injury In Fact.**

Related to the ripeness requirement is the constitutional requirement of standing. *See Rhode Island Ass'n of Realtors, Inc. v. Whitehouse*, 199 F.3d 26, 33 (1st Cir. 1999) ("[S]tanding and ripeness may substantially overlap. The imbrication is nowhere more apparent than in pre-enforcement challenges."). To satisfy the "irreducible constitutional minimum" of standing, a plaintiff must demonstrate an "injury in fact," a "fairly traceable" causal connection between the injury and defendant's conduct, and redressability. *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 102-03 (1998). The injury needed for constitutional standing must be "concrete," "objective," and "palpable," not merely "abstract" or "subjective." *See Whitmore*, 495 U.S. at 155. The injury also must be "certainly impending" rather than "speculative." *Id.* at 158.

Applying these standards here, the Cities' alleged injuries are too speculative to meet the constitutional standing requirement. The administration has taken no action against the Cities pursuant to Section 9 of the Executive Order or Section 1373. Thus, the Cities cannot assert any

actual "concrete," "objective," and "palpable" injury.  *See Whitmore*, 495 U.S. at 155; *Bigelow*, 421 U.S. at 816-17.  Rather, the Cities allege the Order has created "uncertainty," which "chills the policy priorities" of the Cities.  *See* Compl. ¶ 69.   These allegations of alleged uncertainty are "abstract" and "subjective" rather than "concrete."  *See Whitmore*, 495 U.S. at 155; *Bigelow*, 421 U.S. at 816-17.  The Cities also contend that there are "reasons to believe" that the defendants will interpret Section 1373 in a manner the Cities believe would render that provision unconstitutional, that the Secretary will rely on that interpretation to designate the Cities as "sanctuary jurisdictions" pursuant to Section 9 of the Order, and that the Cities "could lose significant federal funding" as a result.  *See* Compl. ¶ 69.  Until several predicate questions are resolved, however, it is unknown what impact, if any, the Executive Order will have on the Cities.  For example, the administration could interpret Section 1373 and Section 9 of the Executive Order in a manner that allays the Cities' constitutional concerns, could decline to designate the Cities as "sanctuary jurisdictions" pursuant to the Order, or could determine that the federal grants the Cities receive are exempt from the Order's reach.  Finally, the Cities assert that, if the Order is applied in the manner the Cities fear, such an application may erode public confidence in local law enforcement.  *See*, *e.g.*, *id.* ¶ 126.  The Order, however, reflects a judgment that public safety is best served by identifying and removing aliens who are unlawfully present, and the Cities' assertions to the contrary are entirely speculative.

As alleged, the Cities' claimed injuries are conjectural and, thus, not sufficiently concrete to constitute an actual or imminent injury-in-fact under the standing doctrine.  The Cities' failure to meet the requirement of constitutional standing deprives the Court of jurisdiction to entertain the complaint.  *Lujan*, 504 U.S. at 559-60. Accordingly, the complaint should be dismissed.

**II.**     **The Cities Fail to State a Claim that Section 1373 Violates the Tenth Amendment.**

      Beyond the lack of justiciability of all of the Cities' claims, the Cities fail to state a claim that 8 U.S.C. § 1373 on its face violates the Tenth Amendment.  The Supreme Court has held that "[a] facial challenge to a legislative Act is, of course, the most difficult challenge to mount successfully, since the challenger must establish that no set of circumstances exists under which the Act would be valid." *Salerno*, 481 U.S. at 745.  Facial challenges to federal statutes are disfavored because they "often rest on speculation[;]" they "raise the risk of premature interpretation of statutes on the basis of factually barebones records[;]" they "run contrary to the fundamental principle of judicial restraint that courts should neither anticipate a question of constitutional law in advance of the necessity of deciding it nor formulate a rule of constitutional law broader than is required by the precise facts to which it is to be applied[;]" and they "threaten to short circuit the democratic process by preventing laws embodying the will of the people from being implemented in a manner consistent with the Constitution." *Wash. State Grange v. Wash. State Republican Party*, 552 U.S. 442, 450-51 (2008).  Thus, the mere possibility that Section 1373 *could be* interpreted or applied in an unconstitutional manner is insufficient to sustain a facial challenge to that provision. *See Salerno*, 481 U.S. at 745 ("The fact that the . . . Act might operate unconstitutionally under some conceivable set of circumstances is insufficient to render it wholly invalid").

      Here, the Cities' Complaint fails to establish that Section 1373 would be invalid under all circumstances.  In enacting Section 1373, Congress determined that a state or local government policy barring voluntary cooperation with federal immigration officials is incompatible with the effective implementation of federal law.  As the Second Circuit has held in rejecting a Tenth Amendment challenge to Section 1373, a contrary interpretation would "turn the Tenth

Amendment's shield against the federal government's using state and local governments to enact and administer federal programs into a sword allowing states and localities to engage in passive resistance that frustrates federal programs." *City of N.Y. v. United States*, 179 F.3d 29, 35 (2d Cir. 1999).  "A system of dual sovereignties cannot work without informed, extensive, and cooperative interaction of a voluntary nature," and the Supremacy Clause resolves any conflicts by "bar[ring] [States] from taking actions that frustrate federal laws." *Id*.  The Tenth Amendment does not, therefore, give States and their subdivisions "an untrammeled right to forbid all voluntary cooperation by state or local officials with particular federal programs." *Id*. Accordingly, because the Cities fail to establish that "no set of circumstances exists under which [Section 1373] would be valid," their facial challenge to that provision must fail.  *Salerno*, 481 U.S. at 745; *see also Hightower v. City of Boston*, 693 F.3d 61, 77 (1st Cir. 2012) (For a facial challenge to the constitutionality of a statute to succeed, the plaintiff "would have to establish . . . that the statute lacks any plainly legitimate sweep.").

**IV.   <u>The Cities Fail to State a Claim Under the Fifth Amendment Vagueness Doctrine</u>.**

The Cities allege generally that the Executive Order is facially deficient under the Fifth Amendment vagueness doctrine because it provides no express definition of the term "sanctuary jurisdiction," and because it fails to specify the exact sanctions that might be levied against a "sanctuary jurisdiction."  Compl. ¶¶ 153-157.  Facial vagueness challenges, however, are not favored, particularly with respect to statutes that do not explicitly inhibit First Amendment freedoms.  *Wash. State Grange*, 552 U.S. at 450 (facial vagueness challenges are "disfavored for several reasons," including because such claims often "rest on speculation").  For statutes that do not explicitly inhibit First Amendment freedoms, vagueness challenges "must be examined in the light of the facts of the case at hand."  *United States v. Mazurie*, 419 U.S. 544, 550 (1975).  And

the Supreme Court has recently reaffirmed that, "before striking a federal statute as

impermissibly vague," courts must consider "whether the prescription is amenable to a limiting

construction." *Welch v. United States*, 136 S. Ct. 1257, 1268 (2016).

Here, the Cities are challenging as vague the terms of an Executive Order, not a statute,

and, as mentioned above, that Order has not been applied to the Cities, and it does not purport to

alter the existing requirements of Section 1373 (or any other federal law), impose new burdens

on state or local jurisdictions, or create any other new legal authority. It is thus unlikely that the

Supreme Court's vagueness jurisprudence even applies to this type of Executive action. *Cf.*

*Humanitarian Law Project v. Dep't of the Treasury*, 578 F.3d 1133, 1145 (9th Cir. 2009)

(applying vagueness principles to review an Executive Order issued pursuant to an express

statutory authorization and applied in a manner that adversely affected a third party).

But even assuming the vagueness doctrine is applicable here, the Cities' vagueness

arguments fail for two reasons. First, the Cities do not allege that the Order inhibits their First

Amendment freedoms. Accordingly, the Court is proscribed from considering their pre-

enforcement vagueness challenge until such time as the Order is applied against the Cities.

*Mazurie*, 419 U.S. at 550; *United States v. Barnes*, 890 F.2d 545, 552 (1st Cir. 1989) ("[W]here

the first amendment is not implicated, a 'void for vagueness' challenge must be unconstitutional

as applied . . . and must be examined in light of the facts of the case at hand.").

The Cities' vagueness claim fails for the additional reason that the challenged provisions

of the Executive Order may be "amenable to a limiting construction." *Skilling*, 561 U.S. at 405.

As mentioned above, the administration has announced that it is currently considering guidance

and procedures that would clarify the exact terms that the Cities challenge. Accordingly, despite

their claims to the contrary, the Cities do not face an immediate "Hobson's choice" of repealing

existing policies or "submit[ing] to the mercy of the Attorney General."  Compl. ¶ 7.  Rather,

Supreme Court precedent requires a third course: the Cities wait until such time as the specific

terms of the Order are clarified, the administration decides to designate the Cities pursuant to the

terms of the Order, and the Secretary or Attorney General attempts to implement the policy

priorities announced in the Order by enforcing existing federal law against the Cities.  At that

time, if it ever occurs, the Cities can exercise whatever legal options might be available to them,

and the courts will be able to review those challenges "in the light of the facts of the case at

hand."  *Mazurie*, 419 U.S. at 550.

## V.  The Cities Fail to State a Claim for Declaratory Relief Regarding Their Compliance with Section 1373.

The first two counts of the Complaint seek declaratory relief that the Cities' policies

comply with the provisions of Section 1373.  *See* Compl. ¶¶ 158-169.  Those counts are subject

to dismissal because the Cities have not identified a cause of action that would allow them to

pursue such relief and because that relief would amount to an advisory opinion.  *See Alexander v.

Sandoval*, 532 U.S. 275, 286-87 (2001) (absent statutory intent to create a cause of action, one

"does not exist and courts might not create one, no matter how desirable that may be as a policy

matter"); *Golden v. Zwickler*, 394 U.S. 103, 108 (1969) ("[T]he federal courts . . . do not render

advisory opinions. . . . This is as true of declaratory judgments as any other field.").

The general jurisdictional statutes that the Cities cite, 28 U.S.C. §§ 1331 and 1346, *see*

Compl. ¶ 18, do not create independent causes of action, and whether a court has subject-matter

jurisdiction is a distinct question from whether a plaintiff has a cause of action.  *See, e.g.*, *Texas

Indus. v. Radcliff Materials, Inc.*, 451 U.S. 630, 640 (1981) ("vesting of jurisdiction in the

federal courts" does not create a cause of action).  Similarly, the Declaratory Judgment Act, 28

U.S.C. §§ 2201-2202, which creates a certain *remedy* that may be available to litigants, does not

itself create a cause of action.  *See, e.g.*, *Buck v. Am. Airlines, Inc.*, 476 F.3d 29, 33 n.3 (1st Cir. 2007) ("Although the plaintiffs style 'declaratory judgment' as a cause of action, the provision that they cite, 28 U.S.C. § 2201(a), creates a remedy, *not a cause of action*.") (emphasis added).

Moreover, that Cities' contention that an "actual controversy exists between [the Cities] and Defendants about whether [the Cities] compl[y] with [Section 1373]," is conclusory and inaccurate.  Compl. ¶¶ 162, 168.  As detailed above, the defendants have not designated the Cities as "sanctuary jurisdictions" or as otherwise being in violation of Section 1373.  Thus, "rather than adjudicating present rights on established facts," rendering a declaratory judgment regarding the Cities' compliance with Section 1373 would be tantamount to issuing an advisory opinion, which is "forbidden by Article III."  *Boston Teachers Union, Local 66, AFT, AFL-CIO v. Edgar*, 787 F.2d 12, 16 (1st Cir. 1986).

## VI.    __Injunctive or Declaratory Relief Against the President is Inappropriate__.

Even if injunctive or declaratory relief were otherwise appropriate, which it is not, no such relief should issue against the President of the United States, whom the Cities have chosen to name as a defendant.  A request to enjoin the President "draws the Court into serious separation-of-powers issues. . . . [T]he Supreme Court has sent a clear message that an injunction should not be issued against the President for official acts."  *Newdow v. Bush*, 391 F. Supp. 2d 95, 105, 106 (D.D.C. 2005) (citing *Mississippi v. Johnson*, 71 U.S. 475, 500 (1866); *Swan v. Clinton*, 100 F.3d 973, 978 (D.C. Cir. 1996) (noting that the Supreme Court has issued a "stern admonition" that injunctive relief against the President personally is an "extraordinary measure not lightly to be undertaken").  Accordingly, the Court should dismiss any claim of injunctive or declaratory relief against the President.

## __CONCLUSION__

For the reasons stated herein, this Court should dismiss the Cities' Complaint.

Date:   April 10, 2017

Respectfully submitted,

CHAD A. READLER
Acting Assistant Attorney General

WILLIAM D. WEINREB
Acting United States Attorney

JOHN R. TYLER
Assistant Director

*/s/ Stephen J. Buckingham*
STEPHEN J. BUCKINGHAM (MD Bar)
Special Counsel
U.S. Department of Justice, Civil Division
Tel: (202) 514-3330
Fax: (202) 616-8470
Email: stephen.buckingham@usdoj.gov
P.O. Box 883 Ben Franklin Station
Washington, DC 20530

*Attorneys for Defendants*